## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DAMIEN DANIEL,

    Plaintiff,

    v.

PATUXENT INSTITUTION, *et al.*,

    Defendants.

Civil Action No.:  SAG-24-223

## MEMORANDUM OPINION

Plaintiff Damien Daniel, an inmate at Eastern Correctional Institution, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Erin Shaffer, Lieutenant Goldman, Warden Johnson, and Patuxent Institution.  ECF Nos. 1, 6.  On March 31, 2025, Defendants Shaffer, Goldman, and Patuxent Institution ("State Defendants") filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.[1]  ECF No. 37.  Daniel opposed the Motion and the State Defendants replied.  ECF Nos. 40, 41.  This matter is now ripe and ready for review.  No hearing is necessary.  For the reasons discussed below, State Defendants' Motion will be granted and the claims against Warden Johnson will be dismissed pursuant to 28 U.S.C. § 1915.

### I.    Background

Daniel states that while incarcerated at Patuxent Institution ("Patuxent") he was placed on disciplinary segregation.  ECF No. 1 at 3.  He alleges that between May 9 and June 3, 2022, he was denied any recreation time, outdoor or otherwise.  *Id.* at 3, 5.  Additionally, the lights in and outside his cell were kept on at all hours and his windows were painted black so he did not know what time of day it was; these conditions aggravated his insomnia, anxiety, and depression.  *Id.*

---

[1] State Defendants also filed a Motion for Leave to File Memorandum Exceeding Local Rules Page Limit, which shall be granted.  ECF No. 36.

at 5; ECF No. 6 at 4. Daniel developed extreme back and neck pain because he could not walk around. ECF No. 1 at 5. He reportedly complained about his conditions to every officer, supervisor, and shift commander but was ignored. *Id.* Warden Johnson and the Commissioner of Correction failed to respond to Daniel's grievance regarding his conditions, and so he appealed to the Inmate Grievance Office. *Id.* at 5-6. Daniel also wrote to Erin Shaffer about the issue but was ignored. ECF No. 4 at 5. According to Daniel, it was seven months before Lt. Goldman, who was in charge of his section, investigated his complaints. ECF No. 1 at 6. Lt. Goldman's investigation found Daniel's grievance to be meritorious, in part because he had not received daily recreation in May and June 2022. *Id.* Daniel seeks $250,000 in damages. *Id.* at 7.

Patuxent Director Erin Shaffer attests that Daniel was awaiting transfer to another prison following his removal from the Eligible Person Program in September 2021 "due to disciplinary matters and a lack of progress." ECF No. 37-5 at ¶ 4 (Ex. 3, Shaffer Decl.). On May 9, 2022, Officer Abeeb Kazeem issued Daniel a Notice of Inmate Rule Violation for refusing housing. ECF No. 37-4 at 2. Daniel moved to administrative segregation pending an adjustment hearing. *Id.* The next day, Daniel signed an Inmate Waiver of Appearance pleading guilty and accepting 30 days in disciplinary segregation and the loss of 30 credits. *Id.* at 5. Daniel left segregation on June 7, 2022. *Id.* at 41.

Daniel filed an Administrative Remedy Procedure ("ARP") complaint on June 3, 2022, complaining about his time in disciplinary segregation. ECF No. 37-4 at 50-51. In his ARP, Daniel asserts that he was only offered recreation three times and was otherwise denied recreation on May 10, 12-15, 17-18, 20-25, 27-31 and June 1-2, 2022. *Id.* at 51. State Defendants note that while Daniel was in segregation, he was not isolated; he was assigned to a double cell. *Id.* at 41. However, they do not state whether he was actually assigned a cellmate during that time.

2

Lt. Goldman attests that Daniel's ARP was received and stamped on June 13, 2022, and usually would have been forwarded to a custody lieutenant for investigation but, for an unexplained reason, was not assigned to Goldman until months later. ECF No. 37-7 at ¶ 4-5. She interviewed Daniel on December 13, 2022, and he confirmed that recreation had resumed after June 3, 2022. *Id.* at ¶ 5, 6. Goldman avers that just prior to Daniel's placement in segregation, the COVID-19 restrictions were lifted, allowing L-3 to have dayroom recreation. *Id.* at ¶ 7; *see also* ECF No. 37-4 at 58. She asserts that neither the Department of Public Safety and Correctional Services ("DPSCS") nor Patuxent guarantees out-of-cell recreation "but it is generally to be made available to individuals when not inconsistent with individual and institutional safety and security." ECF No. 37-7 at ¶ 7.

On one occasion while conducting security rounds, Daniel complained to Goldman about not receiving recreation; she told him there was no guarantee of outdoor recreation, but the COVID-19 restrictions had been relaxed for dayroom recreation. *Id.* at ¶ 8. Goldman told Daniel she would check to see why he had not received recreation. *Id.* Upon investigation, Goldman states that there were maintenance issues in the L-3 dayroom, a broken lock and windows, preventing the staff's ability to secure the room. *Id.* at ¶ 10. After repairs were made, a recreation schedule was reimplemented. *Id.*

As to the conditions of Daniel's cell, Director Shaffer attests that on the L-3 Segregation Tier some, but not all, of the windows are painted to "obscure the line of sight from the housing unit to the staff parking lot;" she denies that the windows are painted black. ECF No. 37-5 at ¶ 6. Goldman states they are painted a "neutral/tan color." ECF No. 37-7 at ¶ 12. State Defendants concede there are lights inside the L-3 cells and on the tier itself but assert they must remain on for security purposes, and are not permitted to be blocked. *Id.*; ECF No. 37-5 at ¶ 7.

## II.    Standard of Review

State Defendants have filed a motion to dismiss or, in the alternative, for summary judgment. Summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Fed. R. Civ. P. 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery.  Here, no Rule 56(d) declaration has been filed.  Instead, both parties have attached evidence to their filings. *See* ECF Nos. 37, 40.  Accordingly, the Court deems it appropriate to consider both parties' attachments and to treat State Defendants' Motion as a motion for summary judgment, despite the fact that discovery has not occurred.

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show that a genuine issue exists for trial.  *Id.*  The non-moving party must provide enough

admissible evidence to "carry the burden of proof in [its] claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)).  A genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999).

In reviewing this motion, the Court also considers Daniel's self-represented status. In *Bullock v. Sweeney*, 644 F. Supp. 507, 508 (N.D. Cal. 1986), the court found that a pro se plaintiff's pleadings and motions must be liberally construed. *See also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting that writings by self-represented complainants are held to "less stringent standards than formal pleadings drafted by lawyers"). Although the Court applies that more liberal standard in reviewing a self-represented plaintiff's response to a defendant's summary judgment motion, the plaintiff "may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue" to be tried before a jury. *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997); *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

### III.    Analysis

State Defendants assert that they are entitled to dismissal or summary judgment in their favor because: (1) they are immune from suit in their official capacities; (2) Patuxent is not amenable to suit; (3) Daniel failed to state a claim; (4) state law violations are not actionable under § 1983; (4) they are entitled to summary judgment on Daniel's conditions claim; and (5) they are entitled to qualified immunity.  ECF No. 37-1.

#### A.  Eleventh Amendment Immunity

The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  State Defendants, other than Patuxent, are Maryland state employees. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, the claims against Defendants Shaffer and Goldman in their official capacities are barred by the Eleventh Amendment., *see Pennhurst State School & Hosp.*, 465 U.S. at 100–01, and will be dismissed with prejudice.

#### B.  Patuxent Institution

To sustain an action under § 1983, a plaintiff must demonstrate that: (1) they suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Because Patuxent, a prison building, is not a "person" subject to suit or liability under § 1983, the claims against it must be dismissed.

### C.  Director Shaffer and Lt. Goldman

State Defendants argue that any claim potentially raised against Shaffer and Goldman in their individual capacities is insufficient because Daniel has not alleged their personal involvement.  ECF No. 37-1 at 18.  Liability under § 1983 only attaches by personal participation in a constitutional violation.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  State Defendants contend that Daniel only alleges that each was a supervisor during the period he was in disciplinary segregation.  ECF No. 37-1 at 17.  In his Complaint, Daniel states that he contacted Director Shaffer, via letter, complaining about his conditions and she failed to respond or intervene.  ECF No. 1 at 5.  This does not establish Shaffer's personal involvement.[2]

Generally, § 1983 does not impose liability on supervisors for the wrongdoing of their employees.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  Rather, a supervisor may be liable for the violations of their subordinates if the supervisor knew the subordinates engaged in conduct that posed an unreasonable risk of constitutional injury and failed to respond in such a manner that gives to an inference of deliberate indifference or tacit authorization of their subordinates' bad acts.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  While Daniel states that he sent Shaffer a letter about the conditions, he does not allege that he told her or that she had reason to know that her subordinates were engaging in unconstitutional conduct.  Therefore, having failed to allege more than having sent Shaffer a letter, Daniel has failed to establish supervisory liability and Shaffer must be dismissed.

The record shows, however, that Lt. Goldman personally spoke to Daniel while he was in disciplinary segregation about his recreation time and investigated his ARP on the matter.

---

[2] Also, to the extent Daniel claims that denial of recreation was a violation of prison policy, a violation of prison policy alone does not raise a constitutional claim for violation of due process.  *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 & n.6 (D. Md. 2015) (citing *Myers*).

Therefore, at a minimum, Daniel has pleaded that she was personally involved in the relevant events. Still, to establish an Eighth Amendment violation, both objective and subjective elements must be present. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The inmate must suffer an injury sufficiently serious that contemporary standards of decency have been violated. *See id.* "Since 'routine discomfort' is part of prison life," in order to demonstrate the objective component of a conditions-of-confinement claim, prisoners must demonstrate 'extreme' deprivations." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). Thus, while conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment, conditions that are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). As for the subjective component, the Eighth Amendment requires a "sufficiently culpable state of mind" on the part of prison officials, *Williams*, 77 F.3d at 761, such as a "deliberate indifference" to the health and safety of inmates, *Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994).

The record does not support a finding that Lt. Goldman was deliberately indifferent. Once Daniel informed her about missing his recreation time, Lt. Goldman investigated the problem, determined its cause (maintenance issues), and took corrective action. At no time did she disregard Daniel's complaint. Lt. Goldman addressed the recreation issue both while he was in segregation and later when she finally received Daniel's ARP. Daniel does not attribute the delayed ARP response to her, and the reason for the delay is not apparent from the record. Thus, even assuming Daniel suffered a severe deprivation from being denied recreation for approximately 20 days in segregation, he cannot establish the subjective element of his claim. Lt. Goldman is entitled to summary judgment in her favor.

### D.  Warden Orlando Johnson

To date, Defendant Johnson has not been successfully served with the Complaint.  State Defendants' counsel notes that he has retired from DPSCS.  ECF No. 37-1 at 3, n.1.  While the Office of the Attorney General does not represent Johnson, they do assert that their immunity argument would equally apply to Johnson in his official capacity as a state employee.  *Id.*  The Court agrees.  Daniel's claims against Johnson in his official capacity will be dismissed pursuant to 28 U.S.C. § 1915, for the same reasons explained in Section III.A., *supra*.

The Complaint against Johnson in his individual capacity must also be dismissed pursuant to 28 U.S.C. § 1915 for failure to state a claim.  At most, Daniel asserts Johnson did not timely respond to his ARP.  Daniel acknowledges, however, that when he did eventually receive a response, his ARP was found meritorious, in part because he had missed numerous days of recreation. Despite the delay, Daniel ultimately received the relief he requested through the administrative process.  Daniel's allegations do not amount to Johnson's personal participation in violating his constitutional rights, because signing off on a plaintiff's ARP is insufficient alone to impose liability. *See Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished); *Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007) (unpublished).

### IV.    Conclusion

By separate Order to follow, State Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be granted.[3] The claims against Defendant Johnson will be dismissed and the case will be closed.

January 15, 2026
_____                        /s/
Date                                      _____
                                          Stephanie A. Gallagher
                                          United States District Judge

_____

[3] Because the Motion will be granted on other grounds, the Court need not address the State Defendants' qualified immunity arguments.